# Smith's Adm'r *v.* Bryant's Adm'r.

*Final Settlement of Accounts of Deceased Administrator.*

1. *Landlord's statutory lien on crop, for rent.*—A landlord's lien on the crop of his tenant, for the rent of the leased premises, is created by the statute (Code of 1876, § 3467), and not by the levy of an attachment, which is only given as a remedy for enforcing it; but it extends only to the crop of the current year.

2. *Retainer by tenant's administrator, for rent due him as landlord.*—If the tenant dies after his crop is gathered, and letters of administration on his estate are granted to his landlord, the latter may retain, out of the proceeds of the sale of the crop, the amount due for the rent of the current year, and is not required to go into equity for relief; but he cannot retain for the rent of a former year, and, if the estate is insolvent, can only share *pro rata* with other creditors.

3. *Testimony as to any transaction with or statement by deceased person.*—When the estate of any deceased person is interested in the result of a suit, a party to the suit is not allowed to testify as to any transaction with or statement by the deceased (Code of 1876, § 3058); but the statute does not forbid any other person, not a party, to testify as to any such transaction or statement.

APPEAL from the Probate Court of Sumter.

In the matter of the final settlement by A. G. Smith, as administrator of the estate of E. W. Smith, deceased, of his intestate's accounts and vouchers as administrator of the estate of Washington Bryant, deceased. On said settlement, said administrator claimed a credit, "as per voucher No. 1 of his account," in these words: "May 4, 1874. Balance of rent of 1872, reserved out of crop of 1872, $240, and interest to day of sale, $26.13—$266.13." This item was contested by the administrator *de bonis non* of Bryant's estate. The evidence adduced in reference to it is thus stated in the bill of exceptions:

"It was proved that said Bryant died in April, 1873; and it was admitted that his estate is insolvent, though not as yet declared so. Accountant (Smith's administrator) offered to prove, by Jane, the widow of the deceased, the terms of renting between E. W. Smith and Washington Bryant: that she knew the six bales were reserved for the rent of 1872, from the declarations of her said husband, who told her, in the latter part of 1872, that he had not finished paying the rent; that early in 1873, a short time before he died, she heard him tell said E. W. Smith, at his (Bryant's) house, where he was sick, 'There was the cotton, he reckoned he would have to take that for the rent;' that he said, among other things, in the same conversation, "If I should happen

to die, you better come out and clamp this cotton'; that she knew the rent of 1872 was not paid, from conversations with her said husband; that she and her husband talked about it, and he and E. W. Smith in her presence; and that this conversation was before the crop of 1873 was pitched. To all and every part of which said statements, the contestant objected," on the ground that it was hearsay evidence, and because the witness was the widow of said Bryant, "and because it was contrary to the spirit and letter of section 2704, Revised Code." The court sustained the objections, and excluded the evidence; to which an exception was reserved by Smith's administrator.

"Geo. W. Dainwood testified as follows: 'Wash. Bryant sold ten bales of cotton to S. & A. Brown. On the 2d October, 1872, E. W. Smith came, and asked Mr. S. Brown if he had bought Wash's cotton; and Brown answered, that he had. Smith told Brown, that his lien for rent would follow the cotton wherever it went. Brown asked him, how much Wash. owed him; and Smith said, between $350 and $400. Brown told him, that he would pay it; and Smith said, 'That was all right—he could take the cotton, and do what he pleased with it.' On the 30th October, 1872, Wash. came into the store, and said, that he wished to pay Mr. Smith his rent of 1872; and Brown told him to go and get Mr. Smith, and bring him down to the store, and he would give him a draft for the rent. Wash. then went out, and in a few minutes he and E. W. Smith came back together; and Brown then gave Smith a draft on A. Proskauer & Co. for $400. The cotton mentioned was the crop made in 1872.' The court permitted what occurred in the absence of E. W. Smith, as connected with what immediately occurred, as part of the *res gestœ;* which was, that said E. W. Smith, who was not present, was sent for, and came in, and received $400 from said Brown, for said Bryant, by draft, which was good. The year 1872 was not mentioned in Smith's presence. To this ruling of the court, permitting the declaration of Bryant before Smith came up to be given in evidence, the accountant then and there excepted.

"Adolph Brown testified: 'About October 2, 1872, Wash. Bryant brought ten bales of cotton to the firm of S. & A. Brown, and it was carried to the depot in Livingston. It was the crop of 1872. Witness went and marked it, and returned to their store. E. W. Smith came to the store immediately afterwards, and told witness he had a rent lien on the cotton for between $360 and $400, and that his lien would follow the cotton wherever it goes. Witness remarked, that it was all right. Afterwards, on the 30th October, 1872,

Wash. Bryant came into the store, and said he wanted to pay his rent to E. W. Smith. He was told to go and bring up Smith; and he went and brought said Smith to the store with him. S. & A. Brown then gave said Smith a draft on A. Proskauer & Co. for $400," which the witness produced, and which, he testified, was paid. "It was proved, also, that Wash. Bryant rented land from said E. W. Smith for several years previous to his death; that the rental value was $360; that the six bales of cotton on the debit side of the account were a part of the crop of 1872, and were left by the decedent on the premises at the time of his death. The accountant proved, also, by R. W. Ennis, that according to the best of his recollection, in the early part of the year 1873, Bryant told him that he was owing Smith, for rent and other things, five or six hundred dollars; and that he also told him, early in 1872, that he had not paid the rent of 1871, according to his best recollection. It was in proof that the crop of 1871 was eighteen or nineteen bales; that one Ennis, a merchant, received ten bales of that for supplies, and one Brown, another merchant, six or eight bales; that this was a short crop; that Brown received, of the crop of 1872, eighteen bales on account, which did not pay his claim, and the six bales went into the hands of said Smith, the administrator."

"This was the substance of all the proof; and the court thereupon rejected the said item and voucher, and refused to allow any credit for rent for the year 1872; to which ruling and decision the said accountant then and there excepted."

The rejection of the claim, and the rulings on the evidence to which exceptions were reserved, are now assigned as error.

THOS. B. WETMORE, for appellant.

R. H. SMITH, and THOS. COBBS, *contra.*

MANNING, J.—The lien of a landlord upon a crop grown on leased premises, for the payment of rent, is given by the statute on the subject, and not by the attachment which, under certain circumstances, the statute authorizes. The attachment is merely a mode of *enforcing* the lien by proceedings at law, not of creating it. Hence, we have lately held that a court of equity may be resorted to by the landlord, when this becomes necessary to make his lien available for the payment of the rent.—*Westmoreland v. Foster*, and *Abraham v. Hall*, in MSS.

The lien, thus having an existence independent of the attachment, may of course, and should, be recognized by the parties to the lease, and effect given to it voluntarily. If the tenant, when the crop is gathered, should turn the portion of it necessary, over to the landlord to be converted into money to pay the rent, or, with the consent of the landlord, should himself sell it and pay the rent out of the proceeds, the transaction would be a proper one.

In the present case, the tenant having died after the crop was gathered, and the landlord having become administrator of his estate, the cotton in controversy, part of the crop, went into his hands; and he was the representative of the tenant as well as himself the landlord. Did he thereby lose his lien on the crop? Assuredly not. Must he, in order to enforce it, as he could not do so at law, go into a court of equity, have an administrator *ad litem* appointed under the statute, and thus create against the estate a heavy bill of costs? This would be very improvident, and ought not to be encouraged. What then should be done? It would be perfectly proper for him, upon a sale of the cotton, to retain the rent, for which he had a lien upon it, out of the proceeds, and credit himself in his accounts as administrator with so much paid on account of the estate. He stands in the places of both the landlord and tenant; and may retain for the same reason that a preferred creditor of an estate, of which he is administrator, may pay himself, in preference of other creditors whose claims are by law postponed to his.

The judge of probate erred, if he denied the administrator's lien on the ground that it could exist only in virtue of an attachment. But if, as some of the evidence seems to indicate, the rent for the year 1872 was paid by a purchaser of the crop made in that year, and only the rent for the year 1871 remained due, the landlord was not entitled to a lien for it upon the crop of 1872, or to pay himself out of the assets of an insolvent estate, from the proceeds of that crop. He would be entitled only to his *pro rata* share with other creditors.

The court erred in excluding the testimony of the widow of the tenant, to prove, at the instance of the landlord, the contract of renting between him and her husband, made in her presence. Section 3058 (2704) of the Code of 1876 does not, by the exception therein, exclude one who is merely a witness from testifying as such, concerning an agreement or conversation between the deceased and another person. It excludes only a party to the transaction or conversation testified about, or a representative in the litigation, of such

party, from giving his own version of it in his own interest, after the death of the other party.

Judgment reversed, and cause remanded.